# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH JERON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 15 C 8074 |
| | ) | |
| THE CITY OF CHICAGO, | ) | |
| RAHM EMANUEL, UNKNOWN | ) | |
| OFFICERS AND AGENTS OF, | ) | |
| THE CITY OF CHICAGO, | ) | |
| ILLINOIS POLICE DEPARTMENT, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

CHARLES P. KOCORAS, District Judge:

Plaintiff Joseph Jeron, filed this two-count action against the City of Chicago ("the City"), Mayor Rahm Emanuel, other City defendants, and the Illinois Police Department (collectively, "Defendants") on September 14, 2015. Jeron alleged that Chicago Police seized certain firearms from his premises in June 2009, and after related criminal charges against him were dismissed, the City denied his request for return of some of the confiscated weapons. Dkt. 1, ¶¶ 16-27. In an Amended Complaint [5] filed November 10, 2015, Jeron asserts claims under 42 U.S.C. § 1983 for due process and ex post facto violations (Count I) and for state law replevin (Count II). Now before the Court is Defendants' Motion to Dismiss [11] pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, that motion is granted.

## BACKGROUND

Jeron's Amended Complaint alleges that on June 11, 2009, "members of the Chicago Police Department conducted a raid of Plaintiff's premises in Chicago, Illinois," at which time "numerous firearms belonging to the Plaintiff were seized by the Chicago Police Department," including multiple handguns, rifles, a shotgun, and an Action Arms Ltd Uzi. Dkt. 5, ¶¶ 16-19. Jeron was thereafter charged with violating two sections of the Municipal Code of Chicago ("MCC") regarding gun registration and possession—§§ 8-20-040 and 8-20-050. *Id*. at ¶ 17. Section 8-20-40 prohibited possession of unregistered firearms, and Section 8-20-050 prohibited registration of certain types of firearms (including assault weapons, as defined in the Ordinance) "and in effect, constituted a ban on those particular weapons." *Id.* at ¶ 14. A year later, the Supreme Court held these two MCC provisions subject to the same Second Amendment standards that apply to federal gun laws. *McDonald v. City of Chicago*, 561 U.S. 742 (2010). The City thereafter "amended the gun registration ordinance and replaced it with another ordinance," "returned to Plaintiff all previously seized handguns," "allowed him to register the handguns in compliance with the ordinance," and "pressed forward with the criminal prosecution of Plaintiff for possession of the remaining unregistered firearms." Dkt. 5, ¶ 19.

Jeron moved to suppress evidence in this criminal prosecution (asserting illegal search and seizure under the 4th Amendment), the state court granted that motion in October 2012, and the City took no appeal and instead dismissed the remaining

2

charges against Jeron in December 2012. *Id*. at ¶¶ 20-21. Jeron thereafter moved for the return of the remaining firearms (following an unsuccessful constitutional challenge to the ordinances under which they were seized), and the state court denied that motion in March 2013. *Id*. at ¶ 22; Dkt. 10-1, at 55-70. In September 2013, while an appeal of that decision was pending, the City repealed §§ 8-20-040 and 8-20-050 and simultaneously replaced the latter with § 8-20-075, which similarly prohibits "Assault Weapons" as now defined in § 8-20-010 (collectively, the "2013 Ordinance"). Dkt. 5, ¶¶ 23, 25-26. The state appellate court then remanded Jeron's constitutional challenge to the two repealed ordinances for further proceedings in March 2014. *Id*. at ¶ 25; Dkt. 14-1, at 10. Jeron filed this case six months later.

With the repeal of the two MCC provisions under which Jeron's weapons were seized in 2009, Jeron alleges here that "there was no longer any ordinance in effect that affected Plaintiff and his ownership of weapons on June 11, 2009." Dkt. 5, ¶ 25. According to Jeron's Amended Complaint, Defendants' continued withholding of the guns therefore violates his due process rights under the 4th and 14th Amendments, and any application of the 2013 Ordinance to the guns seized in 2009 would be an unconstitutional "ex post facto" violation. *Id*. at ¶ 29. Jeron also alleges that Defendants violated his rights under the 4th and 14th Amendments by "[w]rongfully searching and seizing Plaintiff's property." *Id*. These constitutional claims are included in Count I of Jeron's Amended Complaint. In Count II, Jeron asserts a state law claim for Replevin. *Id*. at ¶¶ 30-31. Defendants now move to dismiss.

## DISCUSSION

**I.  Ex Post Facto Clause**

It is well settled that "the Ex Post Facto Clause applies only to laws that render illegal—or punish more severely—conduct performed before the day the law was put into effect." *O'Grady v. Village of Libertyville*, 304 F.3d 719, 723 (7th Cir. 2002); U.S. Const., art. I, § 10, cl. 1.  Thus, to violate the Ex Post Facto Clause, "a law must be both retrospective *and* penal." *U.S. v. Leach*, 639 F.3d 769, 773 (7th Cir. 2011). Defendants assert that the Ordinance at issue here—MCC § 8-20-075—is neither. The Court agrees.

On its face § 8-20-075 is forward looking:  "Any person who lawfully possesses a firearm that on the effective date of this section became prohibited as being an assault weapon has 60 days after the effective date of this section to legally dispose of, or remove from the city, the assault weapon."  Nor is the Ordinance being applied retroactively to Jeron.  As Defendants explain, "Plaintiff was prohibited from possessing the weapons pursuant to MCC § 8-20-050" when they were seized in 2009, and "he is currently prohibited from possessing the weapons pursuant to MCC § 8-20-075."  Dkt. 10, at 8.  Even Jeron concedes that the new section continues to prohibit what its predecessor previously prohibited.  *See* Dkt. 14, at 3 (referring to the "new law enacted in 2013 that substantially is the same as the ordinance in 2009"). An ex post facto law, by contrast, "retrospectively targets conduct that was lawful before the statute was enacted." *Leach*, 639 F.3d at 773.  Not so here.

"To violate the Ex Post Facto Clause, moreover, a law must be both retrospective *and* penal." *Id.*; *O'Grady*, 304 F.3d at 723 ("The clause is aimed solely at penal statutes."). Thus, a law violates the Ex Post Facto Clause "if it *punishes* as criminal conduct an act that was innocent when done, or makes more burdensome the *punishment* for a crime after its commission." *O'Grady*, 304 F.3d at 723 (emphasis added). Here, § 8-20-075 prohibits possession of assault weapons, declares them to be contraband, and provides for them to "be seized by and forfeited to the city." Defendants persuasively argue that such provisions "authorizing seizure and forfeiture" are not "criminal laws imposing punishment." Dkt. 10, at 7-8 (citing *U.S. v. Ursery*, 518 U.S. 267, 285-92 (1996) (civil forfeiture proceedings do not constitute punishment for double jeopardy purposes); *U.S. v. One Assortment of 89 Firearms*, 465 U.S. 354, 358-64 (1984) (civil forfeiture of firearms was "a remedial civil sanction rather than a criminal punishment," not barred by acquittal on unlicensed firearms dealing charges); *City of Chi. v. Jeffries*, 345 Ill. App. 3d 957, 961 (1st Dist. 2004) ("Forfeiture proceedings" related to firearms seized under MCC are "civil in nature.")). The same is true of the seizure and forfeiture provisions in § 8-20-075.

Jeron attempts to resist this conclusion by pointing to the fines and incarceration that can be imposed for a violation of the 2013 Ordinance, which he asserts are "a criminal matter." Dkt. 14, at 3. As Jeron concedes, however, the same was true of "the ordinance in effect in 2009." *Id*. As such, the 2013 Ordinance "does not aim to punish conduct that was deemed innocuous prior to its passage." *O'Grady*, 304 F.3d at 723. Nor is there any suggestion that such fines or penalties are being

asserted against Jeron, much less for conduct in 2009, since both sides agree that all charges against Jeron have been dismissed. Dkt. 5, ¶ 21; Dkt. 10, at 2.[1] But as importantly, even if there "is a sense in which the Ordinance at issue here has a penal aspect, as its application may give rise to criminal penalties," that alone will not give rise to an ex post facto issue where the law at issue has "aims other than punitive ones." *O'Grady*, 304 F.3d at 723. MCC § 8-20-075 prevents the importation, sale, manufacture, transfer, or possession of assault weapons, and provides a 60-day period to any person who lawfully possessed such firearms "to legally dispose of, or remove from the city, the assault weapon." The Seventh Circuit has explained that "a law is not an *ex post facto* law if it does not aim to serve solely punitive goals." *O'Grady*, 3014 F.3d at 723. Clearly, the purposes for these measures are not "solely punitive." *See City of Chi. v. Taylor*, 332 Ill. App. 3d 583, 592-93 (1st Dist. 2002) (explaining MCC purposes "to protect society and potential victims" (quoting cases)).

## II.     Illegal Search and Seizure

Defendants next seek to dismiss Jeron's unreasonable search and seizure claim under the 4th and 14th Amendments as time-barred. Dkt. 10, at 8-9. As Defendants correctly assert, such claims brought in Illinois pursuant to § 1983 are subject to

---

[1] The Court notes Defendants' initial argument that Jeron's ex post facto claim was not ripe when filed, because the 2013 Ordinance had not "actually been applied to Plaintiff," and "may not ever be." Dkt. 10, at 5. But while the fine and incarceration provisions may not have been asserted against Jeron, as noted above, Defendants asserted from the start that he was "prohibited from possessing the weapons pursuant to MCC § 8-20-075." *Id.* at 8. Moreover, Defendants have since withdrawn their ripeness argument, reporting that the state trial court has now applied the "applicable City of Chicago ordinances" and "denied the Plaintiff's motion for return of his weapons." Dkt. 20, at 2. Accordingly, Jeron's ex post facto claim was and is ripe.

Illinois' two-year statute of limitations for personal injury claims.[2] The point at which such claims accrue and the statute of limitations begins to run, however, "is a matter of federal law, and generally occurs when a plaintiff knows the fact and the cause of an injury." *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015); *Devbrow*, 705 F.3d at 767 (although § 1983 claims "borrow the limitations period and tolling rules applicable to personal-injury claims under state law," accrual rules "are governed by federal law.").

In keeping with this accrual principle, Illegal seizure claims under the 4th and 14th Amendments accrue "immediately," in other words, "at the time of the unlawful search or seizure." *See Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010) ("a claim asserting that a search or seizure violated the fourth amendment . . . accrues immediately"); *Gonzalez v. Entress*, 133 F.3d 551, 553 (7th Cir. 1998) ("a claim asserting a violation of the fourth amendment necessarily 'accrues' at the time of the unlawful search or seizure, as we have held several times"); *Turentine v. City of Chicago*, 2014 WL 866509, at *3 (N.D. Ill. Mar. 4, 2014) (a due process claim arising from alleged illegal seizure of weapons accrues at the "initial unlawful seizure of property") (citing cases). Here, Jeron's Amended Complaint demonstrates that his guns were seized in June 2009, Dkt. 5, ¶ 16, yet he did not file this action until September 2015, well outside the two-year statute of limitations.

---

[2] "For claims brought under § 1983, we borrow the limitations period and tolling rules applicable to personal-injury claims under state law," *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013); and Illinois law provides a two-year statute of limitations for personal injury claims. 735 ILCS 5/13-202.

Jeron's response to this delay is at odds with the record and the law. He argues that "the seizure of his property occurred on two occasions: June 15, 2009 and September 13, 2013," the second date corresponding with the 2013 Ordinance's enactment. *See* Dkt. 14, ¶ 12; Dkt. 5 ¶¶ 25-26. But his Amended Complaint demonstrates that there was no subsequent seizure in September 2013; rather, "he made a demand for the return of his property which has been denied by the Defendants." Dkt. 5, ¶ 27. Under Seventh Circuit precedent, "once an individual has been meaningfully dispossessed, the seizure of the property is complete." *Gonzalez v. Vill. of West Milwaukee*, 671 F.3d 649, 660 (7th Cir. 2012) (brackets omitted, quoting *Lee v. City of Chi.*, 330 F.3d 456, 466 (7th Cir. 2003)). "In other words, a 'seizure' of property occurs when property is taken from its owner," and the government's "continued retention" of the property "is not a separate Fourth Amendment wrong." *Gonzalez*, 671 F.3d at 649; *Lee*, 330 F.3d at 466 ("The amendment then cannot be invoked by the dispossessed owner to regain his property."). This result obtains, moreover, regardless of whether "the initial seizure of property was lawful." *Gonzalez*, 671 F.3d at 660.

Thus, contrary to Jeron's argument, there was only one seizure of his weapons, and that occurred in September 2009. That is also when his claim under the 4th and 14th Amendments for "illegally searching and seizing" his property accrued. *See* Dkt. 5, ¶ 29(c); *see also Evans*, 603 F.3d at 363; *Gonzalez*, 133 F.3d at 553; *Turentine*, 2014 WL 866509, at *3. Accordingly, the two-year statute of limitations on that claim expired long before Jeron filed this action in September 2015. *See Turentine*,

8

2014 WL 866509, at *3 ("courts have rejected the notion that the continued retention of property constitutes a continuing violation for purpose of extending the statute of limitations period, as the injury arises from the initial unlawful seizure of property and the retention of the property is 'merely a consequence of the alleged illegal seizure'" (collecting cases and quoting *Shannon v. Recording Indus. Ass'n of Am.*, 661 F. Supp. 205, 211 (S.D. Ohio 1987)).

## III. Due Process

Defendants also seek dismissal of Jeron's due process claim. *See* Dkt. 5, ¶ 29. As Defendants note, Jeron "does not identify whether his due process claim is procedural or substantive." Dkt. 10, at 9-10. So the Court considers Jeron's Amended Complaint under both rubrics, and concludes that neither applies.

To state a claim for a procedural due process violation of a property right, a plaintiff must establish "a protected property interest" and "a denial of due process." *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 900 (7th Cir. 2012). "In any due process case alleging a deprivation of property, 'the threshold question is whether a protected property interest actually exists.'" *Id*. (quoting *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011)). Jeron has made no such showing. While his Amended Complaint repeatedly refers to "Plaintiff's property" (*e.g.*, ¶¶ 22, 27, 29), Jeron makes no attempt to substantiate a **protected** property interest; nor can he. "To claim a property interest protected by the Fourteenth Amendment, a person must have more than a unilateral expectation of the claimed interest. He must, instead, have a legitimate claim of entitlement to it." *Id*. (quoting

9

*Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010)). Yet Jeron concedes that the weapons he seeks to reclaim were "contraband" under the City's 2009 Ordinance, and that the 2013 Ordinance provides the same. *See* Dkt. 14, ¶¶ 4, 7; Dkt. 5, ¶ 26. These admissions negate any protected property interest in those guns. *See Taylor*, 332 Ill. App. 3d at 592-93 (unregistered shotgun that constituted contraband under MCC "need not be returned to the owner, even if it was improperly seized").

Equally problematic, even assuming Jeron has a protected property interest in the confiscated firearms, he has also failed to demonstrate a denial of due process in his effort to reclaim them. Seventh Circuit precedent makes clear that "there was no due process violation so long as a meaningful postdeprivation remedy was available." *Gable v. City of Chi.*, 296 F.3d 531, 540 (2002). And Jeron's Amended Complaint amply demonstrates the availability of such remedies here, with its description of Jeron's state court efforts to regain the guns, and his assertion of a state law claim for replevin in this case (which may also be made in state court, as discussed below). *See* Dkt. 5, ¶¶ 22-23, 25, 31; *see also Tucker v. Williams*, 682 F. 3d 654, 661 (7th Cir. 2012) (post-deprivation claims of conversion or replevin satisfied due process); *Gable*, 296 F.3d at 540 (state replevin action afforded adequate post-deprivation remedy); *Holstein v, City of Chi.*, 29 F.3d 1145, 1148 (7th Cir. 1994) (replevin action provided due process for those seeking return of towed vehicles).

The availability of such state remedies also forecloses any substantive due process claim here. "Unless a governmental practice encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a

legitimate governmental interest, or alternatively phrased, that the practice be neither arbitrary nor irrational." *Lee*, 330 F.3d at 467. "And when a substantive due process challenge involves only the deprivation of a property interest, a plaintiff must show 'either the inadequacy of state law remedies or an independent constitutional violation' before the court will even engage in this deferential rational-basis review." *Id.* (quoting *Doherty v. City of Chi.* 75 F.3d 318, 323-26 (7th Cir. 1996)); *CEnergy-Glenmore Wind Farm No. 1, LLC v. Town of Glenmore*, 769 F.3d 485, 488-89 (7th Cir. 2014) ("We have held repeatedly that a plaintiff who ignores potential state law remedies cannot state a substantive due process claim based on a state-created property right." (citing *Lee*)).

With these standards in mind, any substantive due process claim by Jeron fails on multiple levels. His failure to demonstrate a protected property interest, and the availability of state post-deprivation remedies, both preclude any substantive due process "rational-basis review." Moreover, Jeron's Amended Complaint further fails to justify such rational-basis review, since it lacks any allegation that the state practice at issue (the MCC Weapons Ordnance) was or is "arbitrary," "irrational," or not "rationally related to a legitimate governmental interest." *See* Dkt. 5. Nor has Jeron alleged any fundamental right to support a substantive due process claim. While his Amended Complaint asserts that "the right to keep and bear arms is fundamental" (Dkt. 5, ¶ 18), he has nevertheless disclaimed any Second Amendment challenge in this case. *See* Dkt. 14, at ¶ 14 ("Here, no second amendment claim is presented to this court rather, plaintiff claims a denial of due process of law and his rights under Article

11

1 § 10 of the Constitution"). And finally, Jeron has also failed to demonstrate "an independent constitutional violation" sufficient to support a substantive due process claim, since he has likewise failed to substantiate his claim under Article I, § 10 (the Ex Post Facto Clause) of the Constitution. *See* Dkt. 5, ¶ 29; Dkt. 14, ¶ 14.

## IV. Replevin

With Jeron's constitutional claims dismissed, only his state law claim for replevin remains. While this claim is by no mean inconsequential—as discussed above, it is at least part of the process due Jeron—it need not, and should not, proceed in federal court. *See RWJ Mgmt. Co. v. BP Prods. North Am., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012) ("presumption" is that court will relinquish supplemental jurisdiction over state law claims when federal claims are dismissed); *Wilson v. Price*, 624 F.3d 389, 395 (7th Cir. 2010) ("it was also appropriate for the district court to dismiss the pendent state law claims in the absence of any independent basis for federal jurisdiction."). Accordingly, while Jeron's constitutional claims are dismissed with prejudice, his state law claim for replevin (Count II) is dismissed without prejudice, so that he may pursue it in state court, along with any other state law remedies available or now being pursued. *See Harvey v. Town of Merrillville*, 649 F.3d 526, 532–33 (7th Cir. 2011) (once district court declines to exercise supplemental jurisdiction over state claims, "proper course" is "to dismiss them without prejudice").[3]

---

[3] Given the dismissal of all of Jeron's claims from this action, the Court does not reach Defendants' alternative request to stay the action pending the outcome of proceedings between the parties now underway in state court.

## CONCLUSION

For the foregoing reasons, Defendants Motion to Dismiss [11] is granted. Count I of Plaintiff Joseph Jeron's Amended Complaint [5] is dismissed with prejudice, and Count II is dismissed without prejudice. Judgment will be entered for Defendants.

/s/ Charles P. Kocoras

Dated: April 13, 2016

Charles P. Kocoras
United States District Judge